# CHARLESTON.

HAYS, COMMISSIONER &c. v. CAMDEN'S HEIRS *et al.*

Submitted June 20, 1893.—Decided November 4, 1893.

INFANTS—GUARDIAN *ad Litem.*

> A commissioner of school-lands under chapter 105 of the Code (Ed. 1887) files his petition in the Circuit Court for the sale of certain lands as forfeited, and in pursuance of the statute mentions an infant as one of the claimants of said tracts of land, who appears by his guardian and next friend and excepts to the proceeding, on the ground among others that he should have had a guardian *ad litem* assigned to him. *Held* error to enter any decree thereafter in the suit affecting his interest without having first appointed a guardian *ad litem* to such infant.

WM. E. LIVELY, for appellants.

HOLT, JUDGE:

This is a proceeding instituted in the Circuit Court of Gilmer county on the 1st day of May, 1890, under chapter 105 of the Code (Ed. 1887) by Samuel A. Hays, commissioner of school-lands of said county, against defendant, Flora Camden and others, to ascertain whether certain lands were forfeited for non-entry and, if forfeited, for the sale

thereof. Such proceedings were had, that on the 5th day of February, 1891, the court pronounced a decree in the cause holding certain tracts therein specified to be forfeited to the State, and directing their sale; and from this decree defendants, Flora Camden and others, obtained this appeal.

The first statute on the subject authorizing and directing such proceeding on the part of the commissioner of school-lands is found in chapter 105 of Code of 1868, which took effect on the 1st day of April, 1869. The present constitution took effect from and after the 12th day of August, 1872. As touching this subject see article XIII, Const. By the act of 18th November, 1873, chapter 105 of the Code was amended and re-enacted.

In *McClure* v. *Maitland*, 24 W. Va. 561, it was held that proceedings under the act of 18th November, 1873 (chapter 134, Acts 1872-73) were not judicial proceedings in the sense, that they involved litigation between contesting parties, but were in their character administrative, being simply a mode prescribed by the State for the sale of lands, which are the absolute property of the State, and in the sale of which the State alone is interested; and that the former owner having no interest in the land or the proceeds of sale is not entitled to be a party to the proceedings for the sale in the Circuit Court.

This led to the amendment and re-enactment of the law by the statute as found in chapter 105 of the Code of 1887 (act of 25th March, 1882). By this act it is made the duty of such commissioner to ascertain and report the status in reference to forfeiture of all lands in his county, and, in order to have the same determined judicially, it is made his duty to file his petition in the Circuit Court praying that the same may be sold for the benefit of the school-fund, giving the court all the information he has as to location, quantity, probable value, *etc.*, together with all the facts at his command in relation to the title, the claimant or claimants thereof and their residence, if known, or if not known, that fact should be stated, stating also when, how and in whose name, and for what it was forfeited to the State.

Upon the filing of the petition the court shall direct a summons to be issued by the clerk against the claimants, if

any, named in the petition, the person or persons in whose name the same was forfeited, and all unknown parties claiming the lands or any part thereof named in the petition, requiring them to appear before a commissioner in chancery of the court at a time and place to be named therein, and show cause, if any they can, why the said lands shall not be sold for the benefit of the school-fund. The summons shall be served on each of the persons named therein, if they can be found in the county; and as to such of them as can not be found in the county and such unknown parties it shall be published at least once a week for four successive weeks in some newspaper printed in the county, or if there be no such newspaper printed in the county, in some newspaper of general circulation therein, *etc.;* and such publication and posting, when so made or done, shall be equivalent to the personal service of the said summons on all the parties named therein, upon whom it has not been served personally, and on all the said unknown parties.

The said court shall also by a proper decree refer the said petition to a commisioner in chancery thereof with instructions to inquire into and report upon the matter therein contained, and such others as said court may think proper to direct, and particularly to inquire and report as to the amount of taxes and interest due and unpaid on each tract, *etc.* But said commisssioner shall not proceed under said decree, until the summons aforesaid shall have been served as required by the next preceding section, *etc.;* and as soon as his report is completed, he shall file the same in the clerk's office of the Circuit Court ; and the commissioner of school-lands and any other person interested therein may file exceptions thereto at any time after such filing in the clerk's office before the hearing therein.

If there be no exception to such report, or if there be exceptions thereto which are overruled, the court shall confirm the same, and decree a sale of the lands or any part of them, therein mentioned, which are subject to sale for the benefit of the school-fund, upon such terms and conditions as to the court may seem right. When exceptions are filed to such report which are sustained in whole or in

part, the same proceedings shall be had in the case as if it were a suit in chancery. The sale shall be made, conducted and reported, and such proceedings shall be had therein in all respects, as if such sale had been under a decree in a suit in chancery, *etc.*

Chapter 105 was again amended and re-enacted by the act of 12th of March, 1891 (see Acts 1891, p. 281, and chapter 105, Code, Ed. 1891) and this again was amended and re-enacted by act of 23d February, 1893, (see Acts 1893 p. 57) which is the present law on the subject; but this proceeding was under chapter 105 in the Code of 1887.

The Circuit Court, by decree entered on the 9th day of June, 1890, referred these matters to Commissioner O. C. McQuain, requiring the summons to be issued and served in persuance of chapter 105 of the Code of 1887, the substance of which has already been given. The summons was issued on the 1st day of July, 1890, requiring the parties therein named to appear before Commissioner McQuain at the law-office of Collins & McQuain, in the town of Glenville, on the 4th day of August, 1890. But it has on it no return of service of any kind or in any way. It does not appear to have gone into the hands of any one for service, or to have been published or posted.

But the commissioner published his notice of the time and place of executing the order of reference. Under this notice the commissioner completed his report, which was filed in the clerk's office on the 30th day of August, 1890. On this report G. D. Camden, Flora Camden and Sprigg D. Camden by their attorney indorsed various exceptions to said report on Sept. 1, 1890, with various papers exhibited as part of such exceptions. On the 3d day of October, 1890, these defendants by William E. Lively, Esq., their attorney, filed all these papers, naming them a petition to redeem, *etc.*, all of which were ordered to be noted as filed, including said exceptions to Commissioner McQuain's report.

The said papers filed as above stated are as follows:

"The defendants, G. D. Camden, Flora Camden, and Sprigg D. Camden, infant, by J. N. Camden, his guardian and next friend, appear to the petition filed against them

by the commissioner aforesaid, and the order of the court, requiring them to appear before a commissioner in chancery of said court, and except to the petition and report, to the order of the court, and all the proceedings had and taken in the above matter, as follows, to-wit:

"Exception 1: As to the order of the court referring the matter to a commissioner in chancery, the report of S. A. Hays, commissioner of school-lands, should not have been referred to a commissioner in chancery, because it failed to show the local situation, quantity, probable value of each tract, lot, or parcel, and part of a tract, of land therein mentioned, together with all the facts at his command in relation to the title to the same, and to each tract, lot, part or parcel thereof, the claimant or claimants thereof, and their residence, and stating, also, how and when and in whose name every such tract and parcel and part of a tract or lot was forfeited to the state.

"Exception 2: No summons was ever issued by the clerk of the Circuit Court against the claimants of the lands named in the petition of the commissioner of school-lands to appear before the commissioner in chancery of the court at a place and time therein named, to show cause why the said lands should not be sold for the benefit of the school-fund, notwithstanding the said parties named in the petition are residents of the state of W. Va., and reside in Clarksburg, Harrison county, and in Parkersburg, Wood county, and well known to the commissioner of school lands.

"Exception 3: No summons was served on each of the persons named therein, nor published at least once in each week for four successive weeks in some newspaper printed in the county of Gilmer, nor posted at the front door of the court-house of Gilmer county, nor at some public place in each magisterial district in said county, as required by the statute.

"Exception 4: The lands of the parties named in the petition are not, and never were, forfeited for the non-payment of taxes thereon at any time, and especially the years claimed by the commissioner of school lands.

"Exception 5: Minter Bailey, G. D. Camden and R. P.

Camden owned jointly and were seised in fee simple of large and valuable tracts of land situate on Sand Fork and its tributaries, in Lewis and Gilmer counties; that the larger and most valuable portions of these lands were situated in the county of Lewis, and were by them placed on the assessor's land books of Lewis county in the name of Camden, Bailey & Camden, and were properly assessed with taxes and levies thereon from the formation of the State of W. Va., in 1863, to 1890, inclusive.

"Exception 6: They have paid all taxes, levies, and assessments against these lands for each and every year, and no part or parcel of the same have ever been returned delinquent for the nonpayment of the taxes thereon during the entire period of time alleged by the commissioner. (Note. In 1863 these tracts of land were on the assessor's land books in Lewis county in the name of Camden, Bailey & Camden, and remained thereon in their name until 1877, when partition of the lands was made, and each party was assessed separately with the lands allotted to them, that is to say, for the purposes of partition these large tracts of land were subdivided and laid off in small tracts, and the partition was made by dividing the number of small tracts of land for convenience sake, and to prevent any of the small tracts of land from being dropped from the assessor's books, or the assessor, from negligence, inattention, or mistake, omitting to place those numerous and great number of small tracts of land upon the land books, the parties, with the approval of the assessor, divided the whole number of all the large tracts combined into three parts, and placed on the land books in Lewis county the evidence of the fact as to their act.)

"Exception 7: That large tracts of land on the assessor's books in Lewis county, as placed there in 1877, and down to the present time, include the several tracts of land reported by the commissioner of school lands for Gilmer county, and could have been ascertained by him by due diligence and examination therein.

"Exception 8: The lands reported and mentioned in the petition, if forfeited at all, must have been forfeited in the name of Camden, Bailey and Camden from 1863 to 1877,

inclusive, and from 1877 to 1890, inclusive, in the name of Flora Camden and Sprigg D. Camden, heirs at law of R. P. Camden, deceased, and G. D. Camden.

"Exception 9: Sprigg D. Camden, is a minor under the age of twenty one years, and should have had a guardian *ad litem* assigned him before taking proof or sending these proceedings to a commissioner in chancery to settle. None knew this better than the commissioner of school-lands for Gilmer county.

"Exception 10: The claim of the commissioner of school lands for Gilmer county, if any he has (acting for and on behalf of the State of W. Va.) for all the years preceding the five years before filing his petition, is barred by the statute of limitation, and is a stale demand and should be so declared by a court of conscience and equity.

"Exception 11: There is no evidence in the proceedings showing that the lands reported by the commissioner aforesaid are in Gilmer county, and are detached or separated from the large tracts of land belonging to R. P. Camden's heirs or G. D. Camden in Lewis county, but on the contrary the map and plat of the Camden, Bailey and Camden lands, which is asked to be read and inspected in connection with this exception, shows conclusively that the land reported by the commissioner form a part of and help to make up the large tracts of land that are on and have ever been on the land-books in Lewis county.

"Exception 12: The tract of seventy two acres, lot No. 222, reported by the commissioner of school-lands, was long since sold to Marshall Wiant of Gilmer county by Wm. E. Lively, commissioner appointed by this court in the chancery cause of Sprigg D. Camden, by J. N. Camden his next friend, against Flora Camden and others, now pending and undetermined in this court, and asked to be inspected when this case is heard; and said Wiant has paid for said land and been in possession thereof for a number of years and should be a party to these proceedings.

"Exception No. 13: Lot No. 178, containing only forty eight acres, instead of seventy seven, as reported by the commissioner aforesaid, was sold several years ago to one Charles Collins of Gilmer county by said Lively, commissioner as

aforesaid, in the chancery cause aforesaid, by a decree of this court as aforesaid, and said Collins is and has been for a long time in possession of said land, and should be a party to these proceedings. It is the duty of the court to protect the purchasers of land, and remove from the same any cloud to the title, if by so doing it does not operate a great hardship and loss to others.

"Exception 14: If any of the Camden, Bailey and Camden lands are sought to be subjected to forfeiture, it was the duty of the commisioner of school-lands to have the heirs of M. Bailey, dec'd, living in Lewis county, summoned before the commissioner in chancery, so as to give them an opportunity to defend themselves.

"Exception 15: The defendants first named except generally to all actions, orders, publications, reports, petitions and all proceedings in this case not enumerated or set forth in the exceptions above. If the court should differ with the petitioners in relation to the matter and manner of forfeiture of their lands, then they ask and pray that they be permitted to redeem the same, and pay such sums of money as may be right and due from them on the same.

"G. D. Camden,

"Flora Camden,

"Sprigg D. Camden,

"By Wm. E. Lively, *Atty.*"

On the 7th day of October, 1890, the cause came on to be heard on the report of Commissioner McQuain, the exceptions thereto, and the motion of G. D. Camden and others supported by affidavit for continuance; and Commissioner McQuain without further notice, the parties agreeing thereto, was directed to ascertain and report certain other facts charging the omitted lands with taxes from the year 1869, down to and including the year 1890, and directing other parties to be brought in by summons.

In execution of this order of reference Commissioner McQuain filed his report No. 2 on 31st December, 1890; and Flora Camden and Sprigg Camden filed thereto the same exceptions they had filed to the original report; and John S. Withers, prosecuting attorney, filed exceptions on behalf of the State.

On the 5th February, 1891, the cause came on again to be heard on the report of S. A. Hays, commissioner of school-lands filed 1st May, 1890, the report of Commissioner McQuain filed 30th August, 1890, and the evidence therein referred to and accompanying the same, the exceptions indorsed thereon by G. D. Camden, Flora Camden and Sprigg D. Camden, by Wm. E. Lively, Esq., attorney, and referred to, marked "Exhibit B" upon the report of Commissioner McQuain filed 31st December, 1890, the State's exceptions, and exceptions of Flora Camden and others, and was argued by counsel; upon consideration whereof the court held the following lots of Flora Camden and Sprigg D. Camden as forfeited and liable to be sold for the county and district taxes properly chargeable thereon and the costs of this proceeding, or its proportionate share, viz.: Lot No. 249, of forty five acres; lot No. 221, of one hundred and seven acres; lot No, 222, of seventy two acres; lot No. 248, of one hundred and fifty acres; lot No. 136, of ninety three acres; lot No. 143, of thirty seven and one half acres; the residue of lots No. 178 and No. 182, of forty eight acres—and directed the sale thereof on the terms prescribed by the statute.

The record in this case shows that these are parts of a large tract of land of thirty thousand nine hundred and seventy acres lying on the waters of the Sand Fork of the Little Kanawha River, for the most part in the county of Lewis, but several thousand acres in the county of Gilmer; that it was owned jointly by R. P. Camden, Minter Bailey and G. D. Camden, who at an early day had it, for purposes of sale laid off into lots ranging from one hundred to two hundred acres, and numbered. Of these they had sold quite a number, amounting to some eight thousand acres, leaving the rest unsold.

Minter Bailey departed this life, and his children and heirs at law in 1869, in the Circuit Court of Lewis county brought a suit in chancery against R. P. Camden and G. D. Camden for partition. At the May term, 1869, there was a decree for partition; and commissioners were appointed to make it. Under this decree the commissioners allotted and assigned a certain number of lots to defendant R. P.

Camden, a certain number to Minter Bailey's heirs, the plaintiffs, and a certain number to G. D. Camden, and by decree of 13th November, 1869, the partition as reported was confirmed, and thenceforth the parties held their respective lots and parts in severalty.

The record does not disclose that the heirs of Minter Bailey, deceased, have now or have had any interest, legal or equitable, in these lots of land, since the decree of partition in 1869, but, if they had, they could intervene and bring their rights before the court, for the summons is general as well as special.

The constitution of 1872 (section 6, art. XII) made it the duty of every owner of land to have it entered on the land-books of the county, in which it or a part of it is situated, and cause himself to be charged with the taxes thereon and pay the same; but if it contained less than one thousand acres it was not forfeited for omission, for the reason that small tracts are often left off by the fault of others than the owner, and without his fault or even knowledge; but tracts of one thousand acres or more were forfeited for omission for five successive years or more, as therein prescribed. It was made the duty of various officers to see that all lands were properly charged. Section 39, c. 117, approved 9th April, 1873 (see Acts 1872-3, p. 330) after repeating section 6, of article XIII of constitution of 1872, proceeds as follows: "And when for any five successive years after the passage of this act, the owner of any tract or lot of land, less in quantity than one thousand acres, shall not have been charged on such books with state tax on said land, then by operation of law and without any proceedings therefor the land shall be forfeited and the title thereto vested in the state," *etc.* Acts 1869; section 34, c. 31, Code 1868, and the same provision was re-enacted in section 39, c. 130, of the act of 24th March, 1882 (Acts 2882 p. 387); and the same law is found in section 39, c. 31, Code (Ed. 1887) p. 226; and this was the law under which these proceedings were instituted.

These lands seem to lie wholly in the county of Gilmer, and have never been on the land books of that county, as they should have been, since the year 1869, when the par-

tition of the large tract was made, and would seem, there- fore to be forfeited. The state tax and state school tax thereon having been paid in the county of Lewis, the court in ascertaining the amount necessary to be paid to redeem them did not charge these taxes but only the Gilmer coun- ty and district taxes, and of this the adult appellant can not complain; but she owns jointly with the infant, and no opinion is intended to be hereby given as to the for- feiture of the land of either.

For the various statutes on the subject, see Hutchin- son's Land Titles, especially chapter 7, p. 187. For pro- ceedings under the act of 18th November, 1873 (Acts 1872- 73, p. 449) see *McClure* v. *Maitland,* 24 W. Va. 561. For pro- ceedings under the acts of 30th March, 1837, and 15 March, 1838, see *Coal Co.* v. *Howell,* 36 W. Va. 489 (15 S. E. Rep. 214).

The citation or summons directed to be issued in this proceeding under chapter 105 of Code of 1887, "to show cause, if any they can, why the said lands shall not be sold for the benefit of the school-fund," is in its substance and essential part exactly like the writ of *scire facias,* like the rule to show cause in equity, or like the moni- tion or citation in admiralty. In all courts it is judicial process, and although at common-law a writ, yet it is also an original action, to which the defendant may plead; it is, in fact; our oldest original action. See Glanville, who wrote 1187 (see translation by Beames). See, also, same thing in Bracton, who wrote in 1263, (see Master of Rolls' Ed. 1883.) The essential part of it is still used in all stages of a suit from mesne process at the commencement, through all intermediary stages and collateral proceedings, down to final fruition of the judgment or decree.

The regular form of proceeding in this case would have been for the defendants named, or any intervener to have answered the summons or citation according to the practice in equity of answering or showing cause against orders or rules, such as rules against purchaser of land under decree (see Sand. Eq. 558) or rule against a party in possession to show cause why he should not turn over the possession of the land to the purchaser, *etc.* These parties did not appear

until after Commissioner McQuain had completed and filed his report.

On the 3rd day of October, 1890, these parties, viz: G. D. Camden, Flora Camden, and Sprigg D. Camden, infant, by J. N. Camden, his guardian and next friend, appeared to the petition filed against them, and to the order of the court requiring them to appear before the commissioner in chancery of said court. In this answer to this summons to show cause, *etc.*, they make fifteen points of objection to the petition of S. A. Hays, commissioner of school-lands, to the order of reference, the service of the summons, and to the report of Commissioner McQuain, concluding as follows:

"If the court should differ with the petitioners in relation to the matter and manner of the forfeiture of their lands, then they ask and pray that they be permitted to redeem the same. and pay such sums of money as may be right and due from them on the same;" and with it they file as exhibits parts of the record of the suit of partition, a map of the land with all the subdivisions, two hundred and seventy five in number, showing quantity, location, to whom assigned, from which it appears that the lots in question lie wholly in the county of Gilmer; also, a certificate showing that all taxes have been paid in Lewis county from 1869 to date (1891); that Sprigg D. Camden is a minor under the age of twenty one years, and should have had a guardian *ad litem* assigned before taking proof, *etc.;* and that none knew the infancy of said defendant better than the commissioner of school-lands of Gilmer county."

This brings us to the only point in the case, as far as I can see. The whole scope and tenor of chapter 105 shows it to be a proceeding in chancery, as well as its express language, "the same proceedings shall be had as if it were a suit in chancery." Code 1887, c. 105, § 8. Under section 13, c. 125, Code 1887, it was the duty of the court to appoint a guardian *ad litem* to the infant defendant, not because the court was selling the land of the infant, or of any strict construction in this case, but because the law requires it; and so it has been held in many cases (see *McDonald* v. *McDonald*, 3 W. Va. 676; *Piercy* v. *Piercy*, 5 W. Va. 199;

*Myers* v. *Myers*, 6 W. Va. 369; *Hull* v. *Hull*, 26 W. Va. 1; *Hart* v. *Hart*, 31 W. Va. 688, (8 S. E. 562); especially as the guardian, as next friend, appeared and suggested such infancy, and virtually asked such appointment.

In such circumstances it would have been done, and would be error not to do, in any court, as far as I know. See Ben. Adm. p. 421, rule 140, where the proceedings is *in rem, in persmam*, or both as in this case, in which Court the pleadings are said to be simple and untechnical.

Neither does this record show that the summons was ever served specially or generally on any party in any way by copy delivered or published or posted. It is true that the record shows the publication of Commissioner McQuain's notice, but not of the summons; and section 6 of chapter 105 says: "But such commissioner (in chancery) shall not proceed under said decree until the summons aforesaid shall have been served as required by the next preceding section." This is also made ground of exception in the petition of defendants, among others, by the next friend of the infant; and although waived by the adults, as shown by the order of October 7, 1890, recommitting the report to Commissioner McQuain, it can not be held to have been waived by the infant, who had no guardian *ad litem*. His guardian, as the next friend, brought him into court, and virtually petitioned the court to appoint a guardian *ad litem* to answer and show cause why the land claimed by him should not be sold for the benefit of the school-fund. This the court failed to do, for some reason not stated.

Such error in so fundamental a matter compels a reversal of the decree of 5th February, 1891, complained of.