# CHARLESTON.

John Earle McCreery v. D. Howe Johnston *et al.*

Submitted January 17, 1922.   Decided January 24, 1922.

1. Perpetuities—*Restraints Upon Alienation Only Upheld When Necessary.*

   Restraints upon the alienation of estates are against the policy of our law, and are only upheld to the extent that they are necessary to accomplish some purpose which justifies a departure from such policy.  (p. 84).

2. Trusts—*Equitable Fee Simple Estate in Realty, or Absolute Equitable Estate in Personalty, Cannot be Encumbered by a Spendthrift Trust.*

   An equitable fee simple estate in real property, or an absolute equitable estate in personal property cannot be encumbered by a spendthrift trust.  (p. 85).

3. Wills—*Devise Held to Create a Fee, Provision in Restraint of Alienation Being Void.*

   Where a testator devises to his executors in trust for one of his sons an interest in his estate unlimited as to duration, and provides that such executors shall use the same for the support and maintenance of such son and his family, and for no other purpose, and that such son shall not have the power to alien or create a charge against said estate, such provision creates an equitable fee simple in such son, and the attempt to restrain the use of the same as above indicated is void.  (p. 85).

4.  SAME—*Testator's Intentions Will be Given Effect, Unless in Violation of Positive Rule of Law or Public Policy.*

In the construction of wills, when the intention of the testator is ascertained it will be given effect, unless to do so would violate some positive rule of law or public policy.    (p. 87).

5.  PERPETUITIES—*Time Within Which Estate Must Vest Stated.*

Because of the arbitrary canon known as "The Rule against Perpetuities" a testator may not control the devolution of his estate so as to vest the same at a period more remote than the life or lives of those in being at the time of his death, and twenty-one years and ten months thereafter.    (p. 86).

6.  SAME—*Estate to be Valid, Must Be Determinable at Time of Creation of Estate, so That it Cannot Vest Beyond the Time Fixed by the Rule.*

By the rule against perpetuities every estate created    by deed or will must vest within the life or lives of those in being at the time of its creation, and twenty-one years and ten months thereafter; and the fact that an estate so created may vest within that time will not render it valid.    To be valid it must be such an estate as that it can be determined at the time of its creation that under no contingency will the time of its vesting be postponed beyond the limit fixed by the rule. (p. 86).

7.  SAME—*Devise Held Void as Violating the Rule Against Perpetuities.*

A clause in the will of a testator providing that, in case of the death of any of his daughters without children surviving them, or of any of their children without leaving children surviving them, the part of his estate devised to them shall revert to his other children or their descendants, is in violation of the rule against perpetuities, for the reason that testators daughters who were living at the time of his death may have children born to them more than twenty-one years and ten months after the death of the testator in whom it was the intention of the testator to vest the estate in whole or in part.    (p. 86).

8.  WILLS—*Where part of Testator's General Scheme is to Control Devolution of His Estate for an Unlawful Period, the Provision is Void in Toto.*

Where it appears that a part of testator's general scheme is to control the devolution of his estate for an unlawful period; no part of such scheme can be sustained, and such provision will be void in toto, even though the testator might

have validly controlled the vesting of his estate in part, as indicated in such provision.  (p. 87).

9.  SAME—*Jurisdiction of Equity to Construe Wills Arises Only Where Construction Necessary in Relation to Actual Controversies.*

Generally jurisdiction in equity to construe wills arises only in cases where there is necessity for such construction in relation to actual controversies as to matters which are proper subjects of equity jurisdiction.  (p. 89).

Appeal from Circuit Court, Raleigh County.

Suit by John Earle McCreery against D. Howe Johnston and others for the construction of the will of John W. McCreery, deceased.  Decree for complainant, and defendants appeal.

*Modified and affirmed.*

*Payne, Minor & Bouchelle,* for appellants.

*Sanders, Crockett, Fox & Sanders,* for appellee, John Earle McCreery.

*Russell S. Ritz,* for Mary Katherine McCreery.

RITZ, JUDGE:

John W. McCreery departed this life in the year 1917 leaving surviving him as his heirs-at-law five daughters, one son and four grandchildren, offspring of a deceased son.  He left a large estate which he attempted to dispose of by will, and it is some of the provisions of this will that we are now called upon to define.

The will gave to each of the children and grandchildren above mentioned legacies of particular sums of money, amounting in the aggregate to more than forty thousand dollars, and also devised to some of his children certain specific real estate, and empowered the executors to sell any of his real or personal property for the purpose of raising a fund to pay his debts and the particular legacies.  Without making sale of any of the real estate, which consists of large holdings of mineral lands in the county of Raleigh, all of the debts of the testator have been paid, and all of the particular legacies have been discharged.  The testator devised the residue

of his estate, one-seventh thereof to each of his five daughters, one-seventh thereof to his four grandchildren, children of his deceased son, and the other one-seventh to his executors, to be held for the use and benefit of his son John Earle McCreery, the plaintiff in this suit, with the direction that his executors should hold this one-seventh for the use and benefit of his said son with the understanding that he could not charge it with any debts, and with the direction to pay him out of the same such amounts from time to time as might be proper for the support, care and maintenance of himself and his wife and children. Clause nine of the will provides as follows: ''If any of my daughters die without leaving children, or if all the children of either of my daughters die without leaving or having any children, then the legacies, the devises and bequests given in my will shall revert to my estate and be divided among my children or my descendants.'' Paragraph ten of the will directed the executors to sell the real and personal estate and invest the same in the following language: ''I desire and direct my Executors to sell all of my real estate and personal property not given specifically in this will to my children and grand children owned by me or which I may die sized of, but in making sale of the same they are to use their best judgment when and how they shall do so, and invest the money at interest, on good security, real estate preferred, and pay to the legatees and devisees what I have herein given them, and pay to my son, John Early McCreery in the manner above stipulated, and to my grand children as hereinbefore set forth.'' The questions here for decision are: What is the nature of the estate taken by the plaintiff John Earle McCreery? What estate do the testator's five daughters take in the residue of his large estate? and, what are the duties of the executors under paragraph ten above quoted? The circuit court held that the plaintiff was entitled to take a full one-seventh of the residue of the estate free from any spendthrift trust attempted to be attached thereto; that the five daughters each took a one-seventh interest in the estate without the same being limited in any way by the provisions of paragraph nine above quoted; and that there was no obli-

gation upon the executors to convert the testator's estate into money as directed by clause ten.

It is insisted by the plaintiff John Earle McCreery that the language used by his father in the will is not apt to create a spendthrift trust, and that even though the language used is sufficient for that purpose, still it is ineffectual to that end for the reason that it is an attempt to engraft such a trust upon an equitable fee simple estate. That the will devises to the plaintiff an equitable fee simple estate cannot be questioned. The devise to the executors for the benefit of the plaintiff is of a full one-seventh of the estate without any limitations as to time, and this devise is for the sole benefit of the plaintiff. This undoubtedly created in the plaintiff an equitable fee simple estate in one-seventh of the residue of the estate. Can such an estate be burdened or limited by having attached to it a spendthrift trust as was attempted in this case? It must be borne in mind that all restraints upon alienation are against the policy of our law. The policy of the law is that all property should, so far as is possible, be free to be aliened or disposed of by the actual owner thereof. There are, of course, limitations upon this rule, but they are carried no further than the necessity of the occasion warranting them requires. One of the exceptions in this jurisdiction, and in most other jurisdictions in this country, is that an owner of property may create what is popularly called a spendthrift trust for the benefit of some improvident relative or friend. In England the validity of such trusts is denied, and the same is true in some jurisdictions in this country. However, the right of the owner of property to dispose of it in such a way that it will secure a maintenance to an improvident or impecunious relative, and save him from the effect of his own prodigality is firmly established in this state by our decisions. *Guernsey* v. *Lazear*, 51 W. Va. 328; *Hoffman* v. *Beltzhoover*, 71 W. Va. 72. This relaxation of the policy of the law against the imposition of restraints upon alienation is allowed only to the extent necessary to accompish the very laudable purpose of the owner of the property. The desire of a parent to make ample provision for a spendthrift child, whose habits of prodigality have been the result, most probably, of lack of

parental care, is recognized as presenting a ground suffi-
ciently strong to overcome the public policy against re-
straint upon alienation. If the testator in this case had gone
no further than was necessary to accomplish the purpose he
desired, that is, if he had created only an equitable life es-
tate in favor of his son, and then limited the uses of it to his
support and maintenance, such a limitation would be upheld.
The will in this case, however, creates an equitable fee
simple in the son in the property devised to the trustees
for his benefit. The testator attempts to tie up not only
the life estate in the property, but the whole estate.    To
uphold such limitation would be to withdraw this property
from any practical use, at least during the whole life of the
plaintiff in this case.    This limitation imposes a restraint
upon alienation far beyond what was necessary to accomplish
the testator's purpose of making provision for his son, and
we are not disposed to relax this rule of public policy to
any greater extent than is necessary to accomplish the
purpose which requires its relaxation.    This conclusion
is supported by the authorities so far as we have been able
to examine them.    In nearly all of the cases in which
spendthrift trusts have been upheld only equitable life es-
tates were attempted to be granted.    The doctrine of all
of these cases, however, is that a departure from the rule
against restraints will only be allowed to the extent neces-
sary to accomplish the testator's purpose. The case of *Jen-*
*ken* v. *Brinkley,* 94 Tenn. 721, is reported in 2 American
& Eng. Dec. in Equity, at page 619, and there is attached
to this report of the case an extensive monographic note
upon this question of spendthrift trusts.    The author of
that note, after reviewing the authorities, concludes    with
this language which has peculiar application to the instant
case:    ''But the creation of an inalienable    equitable    fee
is not allowed anywhere.''    This doctrine is fully supported
by the case of *Keyser's Appeal,* 57 Pa. 236, where in an
opinion delivered by Judge Sharswood, the power to impose
such a restraint upon an equitable fee simple estate was
denied.    This case is, perhaps, of peculiar significance in-
asmuch as the state of Pennsylvania is the mother of this

class of trusts. This doctrine is also supported by the following authorities: Page on Wills, §684; Gray on the Rule against Perpetuities, §235; Perry on Trusts, §386A; *Sparhawk* v. *Cloon,* 125 Mass. 263. We are, therefore, of opinion that the decree of the lower court holding that the attempt of the testator to create a spendthrift trust for the benefit of the plaintiff was inneffectual, and that the interest in the estate devised to him is not subject to the conditions and limitations attempted to be placed thereon.

The next question presented for consideration is, what is the effect of clause nine of the will above quoted upon the devises and bequests made by the testator to his five daughters? It is insisted that this attempt to control the devolution of the estate of the testator is void as violating the rule against perpetuities, and in order to determine whether or not this is true it is necessary to ascertain what the clause means. It will be observed that the testator, by the terms of his will, made certain specific devises and bequests to his five daughters, and in addition to these specific devises and bequests he devised and bequeathed to them each a one-seventh interest in the residue of his estate. These provisions for his daughters he then attempted by clause nine, above quoted, to limit or restrict, by providing that if any of his daughters should die without leaving children, or if all the children of any of his daughters should die without leaving or having children, then the legacies, devises and bequests given in the will to any such daughter should revert to and be divided among his children or his descendants. It seems quite clear that the intention of the testator was to vest his estate in his descendants, at least until the death of his grandchildren. He provides for its devolution down to that point. The clear meaning of this provision is that if anyone of his daughters should die without children, then the part of the estate so devised or bequeathed to such daughter would become vested in his remaining children, or their descendants. If he had gone no further than this, there would have been no objection, of course, to the limitation, but he provides further that if any daughter died leaving children, the part of the estate descending to such child or

children of such daughter shall pass to his remaining children, or his descendants, in case such child or children of such daughter shall die without leaving children.    Clearly this contingency might happen beyond the period which the testator is allowed to control the devolution of his estate by the rule against perpetuities.    That rule provides that every estate created by will or deed shall vest within the life or lives of those in being, and twenty-one years and ten months thereafter.    Now clearly some of the testator's daughters, or all of them for that matter, may have children born after the death of the testator, and such children so born after the death of the testator, not only could, but in all probability would, have children born to them more than twenty-one years after the death of such daughter, or daughters, in which event the rule against perpetuities would be violated.    Of course, it may be that all of these estates would become vested within the period limited by law, but the rule is that they must become so vested, else such a provision is void.    It is not enough that a contingent event upon which the vesting of the estate depends may happen, or even that it will probably happen within the limits of the rule.    If it can by any reasonable possibility happen beyond those limits, the interest conditioned on it is too remote and is void.    This is the doctrine af all the authorities.    Gray on the Rule against Perpetuities, §214; Jarman on Wills, p. 299; 21 R. C. L., title "Perpetuities" §11; 30 Cyc. p. 1483; Minor on Real Property, §847.

This conclusion clearly renders void clause nine of the will, unless it can be limited in its application so as to make the estates devised vest upon the death of the testator's daughters.    This can be done if we are permitted to divide the provision and strike out that part providing for the vesting of the estates upon the death of the children of testator's daughters.    Can this be done?    To do so would certainly make a different distribution of his estate from that intended by the testator, and while to hold the limitation void makes a different distribution, this is because of the application of the arbitrary rule of law known as the rule against perpetuities, and does not arise because of any construction

of the will. The manifest purpose and intent of the testator was to vest the estate in those of his own blood at the remote period at which all of his great-grandchildren might be born. He uses the living children somewhat as a link in the chain by which he attempted to accomplish this purpose, and can it be said that when the remote object of the testator's bounty cannot take the estate attempted to be devised or bequeathed, some link in the chain through which it was attempted to pass it may take it? We do not think so. The whole provision must stand or fall together. This is not only consistent with reason, but is supported by the authorities with practical unanimity. 21 R. C. L., title "Perpetuities" §§ 53 and 54; *Johnston's Estate,* 185 Pa. St. 179, 64 Am. St. Rep. 621 and note at page 634; *In re Gerber's Estate,* 196 Pa. St. 366, 46 Atl. 497; *Eldred* v. *Meek,* 183 Ill. 26, 55 N. E. 536; *In re Fair's Estate,* 132 Calif. 523, 64 Pac. 1000; *Knox v. Jones,* 47 N. Y. 389; *In re Estate of Kountz,* 213 Pa. St. 390, 62 Atl. 1103; 3 L. R. A. (N. S.) 639, 5 Am. & Eng. Ann. Cases 427. It would serve no useful purpose to cumulate authorities upon this question. The holdings are uniform that such a provision as we have involved here, constituting a general scheme of the testator to control the vesting of his estate, must entirely fail when any estate attempted to be created thereby will not vest within the limit prescribed by the rule against perpetuities. Our conclusion, therefore, is that clause nine of the testator's will is absolutely void, and has no effect upon any of the estate created by the other provisions of the will.

There is some question raised as to the proper construction of paragraph ten above referred to. It will be noted that this clause authorizes and directs the executors to sell the whole estate and reinvest the same in certain kinds of securities, and to pay to each of the devisees the bequests provided for them. The record in this case shows that to sell the estate at this time would be very disadvantageous to the interested parties; that while at the date of the will it consisted largely of wild, undeveloped lands, at this time these lands have been developed, and are now producing a larger revenue than could be produced by investing the

proceeds in any other way, and the executors desire to know if it is incumbent upon them to sell the corpus of the estate under the provisions above referred to and divide the proceeds among the parties entitled thereto, or reinvest the same and pay to such parties the income. It will be noted that this provision directs the executors to sell the estate and pay to each of the parties entitled thereto the share devised to them respectively, and also to invest the proceeds and pay to such parties the income derived therefrom in the proportion in which they are interested in the estate. Of course, the executors cannot do both of these things. They cannot pay to the devisees in the will such part of the proceeds as they are respectively entitled to under the will, and at the same time invest such proceeds and divide the income in the proportion in which the parties are interested in the estate. Clearly, the testator intended this as an alternative provision. But the question that the executors are anxious about is whether they must now proceed to sell the estate, or whether they may defer this event until some future time. It will be noted that the paragraph referred to gives great latitude to the executors in the exercise of their discretion. Of course, if all of the interested parties were *sui juris* they could elect to take their respective shares of the estate in kind, and no one could complain. Some of them are, however, infants. It suffices to say, we think, that there is no such case made by the pleadings as calls for any immediate action upon the part of the executors looking to a sale of the estate. No party is asking for such a sale to be made, and no facts appear which indicate that such a sale will be beneficial. On the other hand, the contrary is asserted. What may be the proper course for the executors to pursue in the future upon a different state of facts, we are not called upon to say. In the construction of wills the courts will go no further than there is necessity for construction in relation to actual controversies as to matters which are proper subjects of equity jurisdiction. *Callison* v. *Bright*, 85 W. Va. 700. The interested parties in this case who are now infants, it appears from the record, will soon be of age, and when that event happens, if they desire to do so, the parties

may waive the execution of this provision and accept in lieu of their share of the proceeds of a sale of the estate such interest in the estate in kind.

Our conclusion is to modify the decree of the circuit court in relation to the duties of the executors under paragraph 10 so as to provide that under the showing made there is no present duty upon the executors to convert the estate into cash, and to affirm such decree in all other respects.

*Modified and affirmed.*