JOSEPHINE H. BERRY, *exec., etc.,*

*v.*

THE UNION NATIONAL BANK, *etc., et al.,*

(No. 14054)

Decided February 5, 1980.

*Berry, Waters, Spelsburg & Warner and Boyd L. Warner* for appellant.

*Steptoe & Johnson and Ernest C. Swiger* for appellees, Union Nat. Bank.

*McNeer, Highland & McMunn and C. David McMunn* for Clayton, et al.

*Francis L. Warder, Jr.,* for Corsini, et al.

*Jones, Williams, West & Jones and John S. Kaull* for Morris, et al.

HARSHBARGER, JUSTICE:

This case presents the issue whether a private testamentary trust which violates the rule against perpetu-

ities should be modified to effectuate a testatrix' intent or should fail.

Clara Clayton Post died on June 20, 1975, in Harrison County. Her will and codicil were admitted to probate on June 23, 1975, at which time Josephine H. Berry, appellant, qualified as executrix. After a series of specific bequests to her heirs at law, appellees Ellen Clayton and Arthur Clayton, and to other parties, Ms. Post created a private educational trust for the descendants of her late husband's brothers and sisters, giving her trustee absolute discretion to provide educational expenses for class members meeting certain criteria.[1] The

---

[1] Section 9 of the will of Clara Clayton Post states:

"§IX.,1. All the rest and residue of my property (hereinafter referred to as the trust estate of the Residue Trust) I give, devise and bequeath to my Trustee hereinafter named, in trust, to hold, manage, invest and reinvest, to collect the income, and to pay over the net income and principal as follows:

"a. If, at any time during the term of this trust, one or more members of the class described below shall be regularly admitted to a college, university or other recognized accredited institution of higher learning my Trustee may, in its sole and absolute discretion, use all or part of the income and principal of this trust for the educational expenses of any such member or members of such class during such time or times, if any, as such person is, in the sole and absolute discretion of the Trustee, maintaining satisfactory standing in scholarship and in other requirements of the college, university or institution of higher learning in which he is enrolled. I believe it was the desire of my husband that such funds as I might have at my death should be used to help such persons obtain educations. This is the only expression I ever heard him make relative to the disposal of such funds.

"The Matters which my Trustee shall in its sole and absolute discretion determine shall include but not be limited to: (i) whether or not a person is a member of the class defined below; (ii) whether such member has been regularly admitted to a college, university or other recognized accredited institution of higher learning; (iii) whether the institution to which such member has been admitted is a college, university or other recognized accredited institution of higher learning; (iv) how much money shall be used at any particular time for such education of such member; (v) for what items of expense such money shall be used; (vi) whether such money shall be paid to such person or be paid for his benefit; (vii) whether such person is at the time maintaining a satisfactory standing in schol-

trust was to endure for twenty-five years after testatrix' death or until the principal was reduced to less than $5,000.00, whichever should first occur. At the termination of the trust the principal and interest were to be distributed per stirpes to the then living descendants of her husband's brothers and sisters. The Union National Bank of Clarksburg, appellee, was named trustee.

Executrix Berry recognized that the trust potentially violated the rule against perpetuities and entered into a trust termination agreement with the trustee. The agreement amended the twenty-five year provision to twenty-one years and required the executrix to initiate a declaratory judgment action in the Circuit Court of Harrison County to determine *inter alia*, whether the trust violated the rule against perpetuities and whether it was proper for the executrix and trustee to enter into a trust termination agreement. A guardian ad litem was appointed for the unborn beneficiaries on April 26, 1977. The trial court granted summary judgment for the heirs at law, finding that the trust provision violated the rule against perpetuities and was therefore void and without force. The court additionally ruled that the executrix and trustee were not authorized to enter into the trust termination agreement.[2] Executrix Berry appealed.

---

arship and in other requirements of the college, university or other institution of higher learning in which he is enrolled; and (viii) all other matters which must be determined to make this section (a) operative.

"The class of persons eligible for benefits under this section (a) shall be confined to the descendants of the brothers and sisters of my late husband: Russell D. Post; Elma Post Brake; Glen D. Post, Wilma Post Stutler, Mabel Post Criss and Claud A. Post.

"2. This trust shall continue until twenty-five years after my death, or at such time as the principal of said trust shall not exceed $5,000.00, whichever shall first occur, at which time the remaining principal and income shall be distributed, per stirpes, to the descendants of the brothers and sisters of my late husband, living at the time of the termination of this trust."

[2] Because of our disposition of this case on the merits, we need not address the issue of whether the trustee and executrix could modify the term of the trust by agreement.

## I.

The heirs argue that she does not have standing to challenge the declaratory judgment because she is not a potential distributee of the residuary estate, and have moved for dismissal.

*W.Va. Code*, 55-13-4[3] provides that an executrix may bring a declaratory judgment action to determine questions of construction or administration of wills or trusts. The opening phrase is "[a]ny person interested as or through an executor". Had she not initiated the action, *Code*, 55-13-11[4] would require that she be made a party.

> A party to a controversy in any circuit court may obtain from the supreme court of appeals, or a judge thereof in vacation, an appeal from ... a judgment, decree or order of such circuit court in ... civil cases where the matter in controversy, exclusive of costs, is of greater value or amount than one hundred dollars, wherein there is a final judgment, decree or order .... *Code*, 58-5-1.

---

[3] *W.Va. Code*, 55-13-4. Declaration concerning trusts and estates.

Any person interested as or through an executor, administrator, trustee, guardian or other fiduciary, creditor, devisee, legatee, heir, next of kin or cestui que trust, in the administration of a trust, or of the estate of a decedent, an infant, lunatic or insolvent, may have a declaration of rights or legal relations in respect thereto:

(a) To ascertain any class of creditors, devisees, legatees, heirs, next of kin or others; or

(b) To direct the executors, administrators, or trustees to do or abstain from doing any particular act in their fiduciary capacity; or

(c) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

[4] *W.Va. Code*, 55-13-11. Parties.

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding. In any proceeding which involves the validity of a municipal ordinance or franchise, such municipality shall be made a party, and shall be entitled to be heard, and if the statute, ordinance of franchise is alleged to be unconstitutional, the attorney general or the State shall also be served with a copy of the proceeding and be entitled to be heard.

Therefore, as a party to a civil action in circuit court where the amount in controversy exceeds one hundred dollars (which has constitutionally been amended to three hundred dollars, *W.Va. Constitution*, Article VIII, §3[1974]), the executrix also had a statutory right to appeal. In addition, the Uniform Declaratory Judgment Act, *Code*, 55-13-7, provides that "[a]ll orders, judgments and decrees under this article may be reviewed as other orders, judgments and decrees." The Article is to be liberally construed. *Code*, 55-13-12.[5] Appellees' motion to dismiss is denied.

## II.

The analysis of any problem concerning a will must begin with the fundamental principle that a testator's intent shall be ascertained and followed to the extent possible. *Wheeling Dollar Savings & Trust Co. v. Hanes*, ___ W.Va. ___, 237 S.E.2d 499 (1977); *Wheeling Dollar Savings & Trust Co. v. Stewart*, 128 W.Va. 703, 37 S.E.2d 563 (1946); *Bell's Administrator v. Humphrey*, 8 W.Va. 1 (1874).[6] In addition, there is a strong presumption against intestacy, and if possible, a will should be interpreted to avoid total or partial intestacy. *Rastle v. Gamsjager*, 151 W.Va. 499, 153 S.E.2d 403 (1967); *Cowherd v. Fleming*, 84 W.Va. 227, 100 S.E. 84 (1919). The testator's intent will be implemented so long as it does not violate a positive rule of law or public policy. *Emmert v. Old National Bank of Martinsburg*, 246 S.E.2d 236 (W.Va. 1978). If there appears to be a contradiction between the testator's general intent and a particular intent, the general intent is given preference. *Hope Natural Gas Co. v. Shriver*, 75 W.Va. 401, 83 S.E. 1011 (1915).

---

[5] The cases cited by appellees for the proposition that an executor is not an aggrieved party are inapposite to the issue. *Maxwell v. Adams*, 91 W.Va. 486, 113 S.E. 752 (1922) and *Tyler v. Reynolds*, 121 W.Va. 475, 7 S.E.2d 22 (1939) do not involve appeals by personal representatives from declaratory judgments on the construction of instruments or administration of estates.

[6] We cite only West Virginia authorities for this and the other fundamental principles of wills law set out herein because our cases are in accord with the vast majority of other jurisdictions.

The rule against perpetuities is a common law rule which reflects the public policy that a testator or trustor cannot control the devolution of his property for an inordinate period of time. *First Huntington National Bank v. Gideon-Broh Realty Co.*, 139 W.Va. 130, 79 S.E.2d 675 (1953); *McCreery v. Johnston,* 90 W.Va. 80, 110 S.E. 464 (1922). To prevent bars to property alienation the rule requires that:

> '[E]very executory limitation, in order to be valid, shall be so limited that it must necessarily vest, if at all, within a life or lives in being, ten months and twenty-one years thereafter, the period of gestation being allowed only in those cases in which it is a factor.' *Goetz v. Old National Bank of Martinsburg,* 140 W.Va. 422, 84 S.E.2d 759, 772 (1954).[7]

If a testator creates an estate which vests or has the possibility of vesting after a life in being plus twenty-one years and a period of gestation, the estate violates the rule against perpetuities and the testator's intent will be defeated. *Greco v. Meadow River Coal & Land Co.*, 145 W.Va. 153, 113 S.E.2d 79 (1960); *Prichard v. Prichard,* 91 W.Va. 398, 113 S.E. 256 (1922).

It is here that principles of law collide: a testator may not indefinitely control the devolution of his property; but a testator's intent should be honored and intestacy avoided whenever feasible. To remedy this apparent conflict, we adopt a doctrine of equitable modification which courts should apply to certain devises that on their face appear to violate the rule against perpetuities but meet the conditions enumerated below. Our action accords

---

[7] *See also, Brookover v. Grimm,* 118 W.Va. 227, 190 S.E. 697 (1937). The most frequently quoted statement of the rule is found in *The Rule Against Perpetuities* §201 (4th ed. R. Gray 1942) by John Chipman Gray: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." For a better understanding of the rule, *see* Professor Leach's articles, *Perpetuities in a Nutshell,* 51 Harvard L. Rev. 638 (1938) and *Perpetuities: The Nutshell Revisited,* 78 Harvard L. Rev. 973 (1965).

with a developing trend to ameliorate the harsh consequences of "remorseless application" of the rule.[8] The theory which we endorse today is akin to the doctrine of *cy pres* which was initially developed in the area of

[8] There have been statutory and judicial reforms with respect to the application of the rule against perpetuities. The *cy pres* doctrine, alternatively called equitable reformation or equitable approximation, has been statutorily adopted in fifteen states. It has been judicially accepted in an additional three states.

Statutory reforms: California—*Cal. Civ. Code*, §715.5 (Supp. 1979) (West); Connecticut—*Conn. Gen. Stat. Ann.* §45-96 (Supp. 1979) (West); Florida—*Fla. Stat. Ann.* §689.22(4) (Supp. 1979) (West); Idaho—*Idaho Code*, §55-111 (Supp. 1979); Illinois—*Ill. Ann. Stat.* ch. 30, §194(c) (2) (Supp. 1979) (Smith-Hurd); Kentucky—13 *Ky. Rev. Stat. Ann.* § 381.216 (1972) (Baldwin); Maine—*Me. Rev. Stat. Ann.* tit. 33, §102 (1978); Maryland—*Md. Est. & Trusts Code Ann.*§11-103(b) (1974); Massachusetts—*Mass. Gen. Laws Ann.* ch. 184A, §2 (Supp. 1977) (West); Missouri—*Mo. Ann. Stat.* §442.555 (2) (Supp. 1979) (Vernon); New York—*N.Y. Est., Powers & Trusts Law* §9-1.2 (Supp. 1967) (McKinney); Ohio—*Ohio Rev. Code Ann.* §2131.08(C)(Supp. 1976) (Page); Oklahoma—*Okla. Stat. Ann.* tit.60, §§75-78(Supp. 1979) (West); Texas—*Tex. Civ. Code Ann.* tit. 1291b, §2(Supp 1978) (Vernon); Vermont—*Vt. Stat. Ann.* tit. 27, §501 (1975 Rep. Ed.).

Judicial reforms: Hawaii—*In Re Estate of Chun Quan Yee Hop*, 52 Hawaii 40, 469 P.2d 183 (1970); Mississippi—*Carter v. Berry*, 243 Miss. 321, 140 So.2d 843 (1962); New Hampshire—*Edgerly v. Barker*, 66 N.H. 434, 31 A. 900 (1891).

For a general review of legislative reforms, *see Perpetuity Legislation Handbook*, Committee on Rules Against Perpetuities, ABA Section of Real Property, Probate and Trust Law (3d ed. 1967); Bogert, *Trusts & Trustees*, §214 (Rev. 2d ed. 1979).

It is interesting that theories other than *cy pres* have been employed to remedy the harsh results of the rule against perpetuities in its orthodox form. The "wait and see" doctrine has become the law of several jurisdictions and was recently adopted by the American Law Institute for the Restatement (Second) Property, Tentative Draft No. 2 on Donative Transfers. Other jurisdictions have abolished the fertile octagenarian and unborn widow rules. A theory of "separable alternative contingencies" provides for the elimination of a contingency which violates the rule if an alternative is provided in the instrument. By application of that theory, a devise which would be void under the rule can stand in one of its alternative forms.

For an informative discussion of social and political implications of and effects upon the development of *cy pres, see* Chester, *Cy Pres: A Promise Unfulfilled*, 54 Ind. L. J. 407 (1979).

charitable trusts and was legislatively enacted in West Virginia in 1931 for that purpose. *W.Va. Code,* 35-2-2.

The purpose of equitable modification is to revise an instrument in a fashion that effectuates a testator's general intent within the limitations established by the rule.

We support the underlying policies of the rule against perpetuities and will deny validity to an interest which vests beyond the time limitations provided in the rule. However, before a testamentary scheme is totally obliterated by application of the rule, we will determine whether the testamentary disposition can be equitably modified to comport with the rule's underlying policy.

A non-charitable devise or bequest which violates the rule will be modified if the following conditions are met:

(1) The testator's intent is expressed in the instrument or can be readily determined by a court;

(2) The testator's general intent does not violate the rule against perpetuities;

(3) The testator's particular intent, which does violate the rule, is not a critical aspect of the testamentary scheme; and

(4) The proposed modification will effectuate the testator's general intent, will avoid the consequences of intestacy, and will conform to the policy considerations underlying the rule.

The testamentary trust here meets all these criteria for application of the equitable modification doctrine.

Testatrix clearly expressed her general intent in Section IX of her will when she stated:

> I believe it was the desire of my husband that such funds as I might have at my death should be used to help such persons [who are later defined in this section] obtain educations. This is the only expression I ever heard him make relative to the disposition of such funds.

Her general intention to provide funds for education of her husband's nieces, nephews and their families does not contravene the rule. Her particular intention—to have the trust continue for twenty-five years after her death or until the principal was less than $5,000.00— violates the rule. *See Colorado National Bank v. McCabe*, 143 Colo. 21, 353 P.2d 385 (1960); *Beverlin v. First Nat. Bank in Wichita*, 151 Kan. 307, 98 P.2d 200 (1940); Bogert, *Trusts & Trustees*, §213 (Rev. 2d ed. 1979). There is no indication that the twenty-five year period is a critical aspect of her testamentary scheme. If the trust is modified to reduce that twenty-five year period to twenty-one years before distribution of the remaining principal to the then living descendants of her husband's siblings, the general intent to provide for their education will be effectuated, intestacy for that portion of her estate will be avoided, and property will not be controlled by her beyond the perpetuities' limitation.

## III.

An additional point was raised by the guardian ad litem in his counter-assignment of error. After reviewing the will and pleadings the court-appointed guardian advised the court that, depending upon the trust construction and various theories advanced for its validation or reformation, there could be three distinct classes of infants for whom he was appointed guardian, and the interests of each were adverse to the others. He argued that he could not represent all classes without conflict. The trial court took no action.

*W.Va. Code*, 56-4-10, provides in pertinent part:

> Every guardian ad litem shall faithfully represent the interest or estate of the infant or insane person for whom he is appointed, and it shall be the duty of the court to see that the estate of such defendant is so represented and protected. And the court, or the judge thereof in vacation, whenever of opinion that the interest of an infant or insane person requires it, shall remove any guardian ad litem and appoint another in his stead.

The court had a statutory duty to protect all the infant defendants' interests, and should appoint additional guardians for those classes of infants with adverse interests. *Chapman V. Branch*, 72 W.Va. 54, 78 S.E. 235 (1913); *Hays v. Camden's Heirs*, 38 W.Va. 109, 18 S.E. 461 (1893).

## CONCLUSION

It is not necessary for us to address the other issues raised in the parties' briefs due to our disposition of the main question. We hold, therefore, that the will of Clara Clayton Post should be equitably modified to reduce the duration of the trust from twenty-five years to twenty-one years. The ruling of the circuit court is reversed and the cause remanded for appointment of additional guardians ad litem and further proceedings consistent with this opinion.

*Reversed and remanded.*